Affirmed and Memorandum Opinion filed March 1, 2005









Affirmed and Memorandum Opinion
filed March 1, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00214-CR

_______________

 

WILLIE GUNNEL A/K/A WILLIE GUNNELL KIZZEE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_________________________________________________________________

 

On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 43,332

_________________________________________________________________

 

M E M O R A N D
U M   O P I N I O N

A jury convicted appellant, Willie Gunnel, a/k/a Willie
Gunnell Kizzee, of aggravated robbery and sentenced him to sixty years= confinement.  In six issues, appellant contends that (1)
the trial court erred in denying his motion to suppress a videotaped lineup and
subsequent identification, (2) the trial court erred in allowing testimony
regarding appellant=s possession of .22 caliber bullets discovered during a
pat-down search, and (3) the evidence is legally and factually insufficient to
support his conviction.  We affirm.








I. 
Background

On July 25, 2002, Rafiqali Momin was working as a cashier at
a convenience store in Brazoria County, Texas, when he observed three black men
enter the store.  Momin testified that
one of the men approached the counter seemingly intending to purchase a
beverage.  When Momin opened the cash register,
the man reached over the counter and took an undisclosed amount of money.  Appellant was identified by a customer, Eric
Larson, who saw him fleeing the store.

Alfred Ozene was driving past the store at the same time that
the suspects were fleeing.  Ozene
testified that he saw two black men approach a blue Mountaineer SUV.  Ozene observed one of the men pull a pack of
beer from underneath his shirt.  Because
Ozene believed the men were attempting to steal the beer, he followed the SUV
as it sped out of the parking lot.  Ozene
was able to obtain the license plate number, which he subsequently provided to
police.  

Police officers investigating the robbery quickly discovered
that the SUV used in the robbery was also connected to a prior convenience
store robbery in Harris County and that the SUV used in the robberies was
registered to a woman named Harjew.[1]  The police proceeded to Harjew=s home to inquire about the
vehicle.  Harjew informed the police that
she had loaned the vehicle to her son, Carlos Reyes, about ten days
earlier.  While the officers were
questioning Harjew, Reyes arrived at the location.  








Officer Jeffrey, a lead investigator in the Harris County
robbery, read Reyes his Miranda rights, and Reyes was then interviewed by the
officers.  He informed them that on the
day of the Brazoria County robbery, he had allowed a man identified as AWillie@ to use the SUV in exchange for $20
and some narcotics.  Officer Jeffrey
testified that Reyes=s description of AWillie@ was almost identical to the
description of one of the suspects in the Harris County robbery.  Reyes informed the officers that he had seen
Willie with a gun.  Reyes stated that he
had recently dropped Willie off at a location on Simmons Street known as a
crack house, and he agreed to accompany the officers to that location.

When the officers arrived at the Simmons Street house,
appellant was sitting on the front porch. 
The record reflects that several other individuals were also present at
the house. The officers instructed everyone at the house to Astay where they were@ and to Aput their hands in the air.@ 
According to Officer Jeffrey, after the individuals at the house were
instructed to Aput their hands where we could see
them,@ appellant placed his hands into his
pockets and attempted to go inside the house. 
The officers drew their weapons and ordered appellant to come out of the
house.  Appellant complied and walked
back onto the porch.  The officers
performed a pat-down search of appellant and discovered nineteen .22 caliber
bullets in appellant=s pocket, the same caliber as the gun described in the Harris
County robbery. 

Appellant was handcuffed and placed in the back of a patrol
car where he was questioned by Officer Jeffrey. 
During the questioning, appellant claimed he had not borrowed the SUV
that was used in the robberies.  Because
Officer Jeffrey did not believe appellant was telling the truth, he terminated
the interview.  Officer Jeffrey
testified, AAt that point [appellant] apologized
and said he wanted to talk to me and heCthat he had lied and he knew he had
lied, and his lie was that he had never been in that vehicle . . . .@ 
However, Officer Jeffrey did not speak with appellant any further. 

Appellant was transported to the police station where he was
placed in a videotaped lineup.  An
eyewitness from the Brazoria County robbery viewed the videotaped lineup and
identified appellant as one of the robbery participants.  








II. 
Admissibility of Videotaped Lineup

In his first and second issues, appellant contends that the
trial court erred in denying his motion to suppress the videotaped lineup, and
subsequent identification, because (1) they were procured as the result of an
illegal arrest conducted without probable cause in violation of Article I,
section 9 of the Texas Constitution, and (2) the arrest did not fall within a
statutory exception to the warrant requirement. 
We address both of these issues in turn.

A.        Standard of
Review

In reviewing a trial court=s ruling on a motion to suppress, we
give almost total deference to a trial court=s determination of historical facts,
and we review de novo the court=s application of the law of search
and seizure.  State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing Guzman v. State, 955
S.W.2d 85, 88B89 (Tex. Crim. App. 1997)).  At a hearing to suppress evidence, the trial
court is the sole judge of the weight and credibility of the evidence.  See State v. Ballard, 987 S.W.2d 889,
891 (Tex. Crim. App. 1999).  In this
case, the trial court did not make explicit findings of historical fact, so we
review the evidence in a light most favorable to the trial court=s ruling.  O=Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim. App.
2000). 

B.        Constitutionality
of Warrantless Arrest  








Article I, Section 9 of the Texas Constitution forbids
unreasonable searches and seizures.  Tex. Const. art. I, ' 9. 
When an accused challenges a warrantless arrest under the Texas
Constitution, the proper inquiry is the reasonableness of the seizure under the
totality of the circumstances.  State
v. Steelman, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002).  In order to satisfy the reasonableness
requirement, a warrantless arrest must be supported by probable cause.  See Johnson v. State, 912 S.W.2d 227,
235 (Tex. Crim. App. 1995).  Probable
cause to arrest exists when the facts and circumstances within the officer=s knowledge, and of which the officer
had reasonably trustworthy information, were sufficient to warrant a prudent
person in believing that the suspect has committed or was committing a
crime.  Amores v. State, 816
S.W.2d 407, 413 (Tex. Crim. App. 1991); Cornejo v. State, 917 S.W.2d
480, 482B83 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
AProbable cause deals with
probabilities; it requires more than mere suspicion but far less evidence than
that needed to support a finding by a preponderance of the evidence.@ 
State v. Parson, 988 S.W.2d 264, 268 (Tex. App.CSan Antonio 1998, no pet.).  When more than one officer participates in
the arrest, we examine the cumulative information known to all the
officers.  See Muniz v. State, 851
S.W.2d 238, 251 (Tex. Crim. App. 1993).

In this case, much of the relevant information leading to
appellant=s arrest was provided by Carlos
Reyes.  During the interview with Reyes,
the officers learned that a man named AWillie@ had borrowed the SUV that was used
in the robberies.  According to Reyes,
Willie borrowed the SUV from about 10:00 a.m. until 9 or 10:00 p.m. on the same
day that the Brazoria County robbery was committed.  Reyes told the officers that he socialized
with Willie after Willie returned the SUV and that, during this period of time,
Willie was carrying a gun.  Reyes also
provided the officers with a description of Willie, which corresponded to a
description of one of the Harris County robbery suspects.  Finally, Reyes informed the officers that he
had dropped Willie off at a specific location on Simmons Street. 

It was Officer Jeffrey=s opinion that he did not possess
sufficient information to obtain an arrest warrant after speaking with
Reyes.  However, our review of the record
indicates that sufficient probable cause to arrest appellant was subsequently
developed.








Probable cause to arrest a person can exist based on a tip from
a reliable and credible informant, if the informant=s statements are highly detailed and,
before making the arrest, the officers verify the details given by the
informant.  Curry v. State, 965
S.W.2d 32, 34 (Tex. App.CHouston [1st Dist.] 1998, no pet.) (finding probable cause
where detailed description of the defendant and his first name was provided); Whaley
v. State, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985) (holding probable
cause existed where informant described defendant wearing a white shirt with
colored trim and blue jeans, and the bag he was carrying).  The evidence at trial must show the informant=s reliability and credibility.  Eisenhauer v. State, 678 S.W.2d 950,
951 (Tex. Crim. App. 1984).  An informant=s reliability can be proved by
showing the informant has provided truthful information in the past.  Rodriquez v. State, 838 S.W.2d 780,
782 (Tex. App.CCorpus Christi 1992, no pet.).  Another way is to corroborate the information
through independent investigation.  See
id.  Reliability is strengthened if
the tip is based on personal observation rather than hearsay and if the tip is
given in great detail, showing the informant has a strong basis for his
knowledge.  Id.  

In this case, Reyes had not previously provided credible and
reliable information to the officers. 
However, Reyes=s information regarding appellant=s use of the vehicle was based on
personal, first-hand knowledge, as opposed to rumor or hearsay.  See Hackleman v. State, 919 S.W.2d
440, 447 (Tex. App.CAustin 1996, pet ref=d, untimely filed).  Reyes had personally loaned the vehicle to
appellant and also observed appellant carrying a gun and a large amount of
cash.

Moreover, the officers were able to corroborate the
information provided by Reyes.  After
interviewing Reyes, the officers proceeded to the Simmons Street house where
Reyes told the police he had left Willie. 
When the officers encountered appellant at that location, they verified
that appellant=s name was Willie and that he matched
the description of one of the robbery suspects. 
Officer Jeffrey testified that appellant was the only individual at the
crack house matching the description of any suspect. 








In addition to the information initially provided by Reyes
and subsequently corroborated by further investigation, there were developments
at the Simmons Street house which support probable cause.  First, when the officers arrived at the
house, appellant put his hands in his pockets and attempted go inside the
house.  Avoiding officers is a factor to
consider when determining probable cause. 
Guzman, 955 S.W.2d at 90 (citing Pyles v. State, 755
S.W.2d 98, 109 (Tex. Crim. App. 1988)).  

Additionally, furtive actions at the approach of police
officers, when coupled with specific knowledge on the part of the officers
connecting the suspect to the evidence of crime, are proper factors to consider
in determining whether probable cause supports a decision to arrest.  See Muniz v. State, 672 S.W.2d 804,
806 (Tex. Crim. App. 1984).  Here, in
addition to appellant=s furtive gestures, the officers had specific knowledge
connecting appellant to the robberies. 
Namely, the information provided by Reyes linked appellant to the SUV
used in the robberies.  Moreover, when
the officers conducted a pat-down search, they discovered nineteen rounds of
.22 caliber ammunition, the same caliber as the gun described in the Harris
County robbery.  Finally, when appellant
was questioned by officers, he initially claimed that he had never been in the
SUV used in the robberies, but when the officers terminated the interview,
appellant admitted that his statement was not truthful.   








To determine whether probable cause exists, we review all of
the facts and circumstances known by the officers at the time of the arrest.  Amores, 816 S.W.2d at 413; Johnson
v. State, 32 S.W.3d 294, 298 (Tex. App.CSan Antonio 2000, pet. ref=d). 
In sum, the information known to the officers at the time of appellant=s arrest is as follows: (1) a blue
SUV had been used in a string of robberies; (2) Carlos Reyes loaned the SUV to
an individual named AWillie@ during the same period of time that the Brazoria County
robbery had been committed; (3) Carlos Reyes dropped Willie off at a crack
house on Simmons Street on the night of the Brazoria County robbery; (4)
appellant=s first name is Willie, and he was
sitting on the front porch of the same crack house on Simmons Street; (5)
appellant matched the reported description of one of the suspects in the Harris
County robbery; (6) when police officers arrived at the crack house, appellant
put his hands in his pockets and attempted to avoid the officers by walking
inside the house; (7) a pat-down search of appellant revealed nineteen rounds
of .22 caliber ammunition, the same caliber as the gun described in the Harris
County robbery; and (8) when appellant was questioned, he initially claimed
that he had never been in the SUV used in the robberies, but when officers
terminated the interview, appellant admitted that his answer was not truthful. 

Considering the totality of the circumstances in this case,
including the information provided by Reyes, the subsequent corroboration of
details, and the observations made at the Simmons Street house, we conclude
that probable cause existed for the officers to make a warrantless arrest.  Therefore, the arrest did not violate
appellant=s rights under Article I, Section 9
of the Texas Constitution.   

C.        Statutory
Authorization to Arrest

Under Texas law, a warrantless arrest must fall within one of
the exceptions to the warrant requirement set forth in Chapter 14 of the Code
of Criminal Procedure.  See Amores,
816 S.W.2d at 413.  The trial court did
not explicitly find which exception to the warrant requirement authorized
appellant=s warrantless arrest.  However, the facts and circumstances of the
arrest support an implicit finding that the officers had authority to arrest
appellant without a warrant under article 14.03(a)(1) of the Texas Code of
Criminal Procedure.  

Article 14.03(a)(1) permits a peace officer to arrest a
person without a warrant if the person is found in a suspicious place and under
circumstances that reasonably show that such person has been guilty of some
felony or breach of the peace.  Tex. Code Crim. Proc. Ann. art.
14.03(a)(1) (Vernon Supp. 2004B05).  To justify a
warrantless arrest under article 14.03(a)(1), the State must prove (1) the
existence of probable cause that the defendant committed a crime, and (2) that
the defendant was found in a Asuspicious place.@ 
Goldberg v. State, 95 S.W.3d 345, 363 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d); Parson, 988 S.W.2d at
266.  We have determined that the
officers had probable cause to arrest appellant.  Now, we must address whether appellant was
found in a Asuspicious place.@








Determining whether a place is Asuspicious@ is a highly fact-specific
question.  Parson, 988 S.W.2d at
268.  Few places are inherently
suspicious, but a Aplace may become suspicious because of facts and
circumstances known to the officer and any reasonable inferences which can be
drawn from those facts.@  Cornejo, 917
S.W.2d at 483.  A place can be suspicious
because (1) an eyewitness or police officer connected the place to the crime,
(2) a crime occurred there, or the police reasonably believed a crime occurred
there, (3) specific evidence directly connected the defendant or the place with
the crime, or (4) appellant=s behavior was a factor in determining whether a place was
suspicious.  Goldberg, 95 S.W.3d
at 363.

In this case, appellant was found on the front porch of a
known crack house.  The officers had
specific information that an aggravated robbery suspect, identified as AWillie,@ had recently been dropped off at the
location. When officers arrived at the location, they discovered that appellant=s name was Willie and that he matched
the description of one of the robbery suspects. 
The officers also observed appellant put his hands in his pockets and
attempt to enter the house after they had instructed everyone to Aput their hands where we could see
them.@

We hold that the circumstances under which the officers were
at the Simmons Street house, combined with appellant=s suspicious behavior, rendered the
house a suspicious place. Therefore, the officers had authority to arrest
appellant without a warrant under article 14.03(a)(1).  See Tex.
Code Crim. Proc. Ann. art. 14.03(a)(1).

We overrule appellant=s first and second issues.

IV. 
Constitutionality of the Search








In his third issue, appellant contends that the trial court
improperly admitted testimony at the punishment hearing regarding the .22
caliber bullets because the bullets were obtained during an illegal search at
the Simmons Street house.  Appellant does
not dispute that the officers had reasonable suspicion for an investigative
detention at the time of the pat-down search. 
However, appellant argues that when the pat-down search was performed,
he was under arrest without probable cause and not merely being detained.  Therefore, to resolve this issue, we must
determine whether appellant was under arrest at the time of the search.  

A.        Arrest or
Investigative Detention?

The standard for distinguishing between an investigative
detention and an arrest is not always clear because both constitute seizures.  See Josey v. State, 981 S.W.2d 831,
839 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d). 
Article 15.22 of the Texas Code of Criminal Procedure provides that A[a] person is arrested when he has
been actually placed under restraint or taken into custody.@ 
Tex. Code Crim. Proc. Ann.
art. 15.22 (Vernon 1977).  Whether a
detention is an actual arrest or an investigative detention depends on the
reasonableness of the intrusion under all of the facts.  See Rhodes v. State, 945 S.W.2d 115,
118 (Tex Crim. App. 1997).  

During an investigative detention, an officer may employ the
force reasonably necessary to effect the goal of the detention: investigation,
maintenance of the status quo, or officer safety.  Id. at 117.  However, if the force utilized exceeds that
reasonably necessary to effect the goal of the stop, such force may transform
an investigative detention into a full-blown arrest.  See State v. Moore, 25 S.W.3d 383, 385B86 (Tex. App.CAustin 2000, no pet.). Reasonableness
must be judged from the perspective of a reasonable officer at the scene,
rather than with the advantage of hindsight. 
Rhodes, 945 S.W.2d at 118. 
Allowances must be made for the fact that officers must often make quick
decisions under tense, uncertain, and rapidly changing circumstances.  Id.








Additional factors to consider in determining the
reasonableness of the detention include the nature of the crime under
investigation, the degree of suspicion, the location of the stop, the time of
day, and the reaction of the suspect.  Moore, 25 S.W.3d at 386.  The officer=s opinion, while not determinative,
is another factor to be considered.  Amores,
816 S.W.2d at 412.  Also important is
whether the officers actually conducted an investigation after seizing the
suspect.  Moore, 25 S.W.3d at
386.  

At the suppression hearing, Officer Jeffrey testified that
appellant was not under arrest until he was escorted to the police
station.  However, appellant argues that
the officers= actions once they arrived at the
Simmons Street house indicate that appellant was under arrest before the
pat-down search.  To support his
contention that he was under arrest, appellant cites two Court of Criminal Appeals
cases.

In Hoag v. State, the officers placed the appellant
under surveillance for the purpose of apprehending him in a burglary.  728 S.W.2d 375 (Tex. Crim. App. 1987).  The officers stopped the appellant=s vehicle after observing the appellant
leave an apartment complex from which they suspected he had committed a
burglary.  Id.  The appellant was removed from the car at
gunpoint, taken to the rear of the car, and given statutory warnings.  Id. 
The court held that the appellant was under arrest when he was removed
from the car at gunpoint. Id. at 379. 

In Amores, a police officer responded to a Aburglary in progress@ call from an apartment complex
indicating a black male was loading a box into a car.  Id. at 410.  The officer arrived at the scene within one
minute of the call and observed the appellant, a black male, sitting in a
parked car.  Id.  As the officer entered the complex parking
lot, the appellant began to drive away.  Id.  The officer blocked the appellant=s vehicle with his police car, drew
his gun and pointed it at the appellant, ordered him out of the vehicle, made
him lie on the ground with his hands behind his back, and told him that he
would shoot him if he did not follow directions.  Id. 
The court held that A[t]hese facts are sufficient to demonstrate that appellant
had been restricted or restrained in his liberty to such a degree as to
constitute an arrest.@  Id. at 412.








Like Hoag and Amores, the officers in this case
drew their weapons in the course of detaining appellant.  However, unlike Hoag and Amores,
there were officer safety concerns present in this case that necessitated the
officers= display of force.  In this case, the police encountered
appellant after midnight at a known crack house.  The officers were aware that an aggravated
robbery suspect had recently been dropped off at that location.  The officers also knew that the suspect had
been seen carrying a gun.  Further, when
the officers arrived at the location, they observed appellant reach into his
pocket and attempt to avoid the officers. 
Thus, in order to safely continue their investigation, it was reasonable
for the officers to draw their weapons and secure appellant.

Moreover, unlike Amores, the officers in this case
conducted further investigation after the detention.  Once appellant was secured in the back of the
patrol car, Officer Jeffrey initiated an interview of appellant.  The interview was terminated immediately
after Officer Jeffrey believed that appellant provided an untruthful answer.

Under the circumstances of this case, we find that appellant
was subject only to an investigative detention, not an arrest, at the time of
the pat-down search.  Therefore, we
reject appellant=s argument that the search was performed incident to an
unlawful arrest conducted without probable cause.

B.        Scope
of the Search

Alternatively,
appellant argues that even if he was only subject to an investigative detention
at the time of the pat-down search, the .22 caliber bullets were nonetheless
seized unlawfully because the search exceeded the permissible scope of a
weapons frisk.  However, we find that
appellant has failed to preserve this argument for appellate review.








A
motion to suppress is nothing more than a specialized objection to the
admission of evidence.  See Martinez
v. State, 17 S.W.3d 677, 682B83 (Tex. Crim. App. 2000).  An objection to the admission of evidence
must be specific, and the grounds for the objection must be clearly expressed
in order to preserve error.  Tex. R. App. P. 33.1(a); Villareal
v. State, 811 S.W.2d 212, 217 (Tex. App.CHouston [14th Dist.] 1991, no
pet.).  If the objection in the trial
court differs from the complaint made on appeal, the defendant has failed to
preserve error for review.  Wilson v.
State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  

The
only specific objection raised in appellant=s motion to suppress was that the
arrest and subsequent search were conducted Awithout [a] valid warrant or without
probable cause or reasonable suspicion . . . .@ 
In his motion to suppress, appellant did not contend the search was
invalid because the officers exceeded the permissible scope of a pat-down
search incident to an investigative detention. 
Moreover, appellant made no argument before the trial court regarding
the permissible scope of the search.  

Because
appellant failed to raise this issue in the trial court, the record is devoid
of any testimony concerning the officer=s tactile perceptions as he performed
the pat-down search.  See Carmouche v.
State, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (holding that an officer
performing pat-down search may seize an object whose contour or mass makes its
identity immediately apparent ). 
Therefore, there is nothing for us to review, and appellant has waived
this argument.

We
overrule appellant=s third issue.

V. 
Sufficiency of the Evidence

In
his fourth, fifth, and sixth issues, appellant challenges the sufficiency of
the evidence to support his conviction. 
Specifically, appellant contends (1) the evidence is legally and
factually insufficient to prove that he used or exhibited a deadly weapon
during the course of the robbery, and (2) the evidence is factually
insufficient to prove his identity as a participant in the offense.








In
reviewing legal sufficiency of evidence, we view all of the evidence in a light
most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318B19 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex.
Crim. App. 2000).  In conducting this
review, we do not engage in a second evaluation of the weight and credibility
of the evidence, but only ensure that the jury reached a rational
decision.  Muniz v. State, 851
S.W.2d 238, 246 (Tex. Crim. App. 1993). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993).

In
reviewing factual sufficiency of evidence, we view all of the evidence in a
neutral light to determine whether the evidence supporting the finding of guilt
is so weak, or the contrary evidence so strong, that the
beyond-a-reasonable-doubt standard could not have been met.  See Threadgill v. State, 146 S.W.3d
654, 664 (Tex. Crim. App. 2004).  Although
we review the fact finder=s weighing of the evidence, and we
are authorized to disagree with the fact finder=s determination, our evaluation
should not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  In our review, we must
consider the evidence that the appellant claims most undermines the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). 

A
person commits the offense of aggravated robbery if that person (1) in the
course of committing theft, (2) with the intent to obtain and maintain control
of property, (3) knowingly and intentionally, (4) threatens or places another
in fear of imminent bodily injury or death, and (5) then and there uses or
exhibits a deadly weapon.  Tex. Pen. Code Ann. ' 29.03 (Vernon 2003).

A.        Deadly Weapon Finding

Appellant
first contends that the evidence is legally and factually insufficient to
support a conviction for aggravated robbery because there was only
speculation that he used or exhibited a firearm.  The trial court=s charge to the jury included an
instruction on the law of parties.  See
Tex. Pen. Code Ann. ' 7.02(a)(2) (Vernon 2003).  Therefore, we will sustain appellant=s conviction if the evidence is
sufficient to prove that any one of the suspects used or exhibited a deadly
weapon during the robbery.   








The
cashier, Rafiquali Momin, was the only witness to the events in the convenience
store.  At trial, Momin gave conflicting
testimony as to whether one of the robbers exhibited a firearm during the
robbery.  On direct examination, the prosecutor
asked Momin, AWhich individual, sir, pointed the gun at you?@ 
Momin responded, A[One of the robbers] pulled the
[emergency] switch button and he showed me gun.@ 
However, Momin then stated that he was not sure whether the weapon
displayed was a gun.  When the prosecutor
questioned him further, Momin stated that he believed the object was a gun, and
he was very scared when the robber showed him the object. 

The
State presented testimony from several individuals who spoke with Momin
following the robbery.  Alfred Ozene was
present at the convenience store shortly after the robbery.  Ozene testified when he entered the store,
Momin stated that he had been robbed with a gun.  Further, Deputy Chris Carson interviewed
Momin following the robbery.  Deputy
Carson testified that during the interview, Momin stated that one of the
robbers displayed a small pistol. 
According to Carson, Momin described the pistol as a small dark
gun.  Finally, Eric Larson testified that
he spoke with Momin following the robbery. 
Larson testified that Momin was not certain whether the weapon shown to
him was a gun.  However, Larson testified
that the object Awas enough to make [Momin] want to cooperate [with the
robbers].@  

The
weight given to any contradictory testimonial evidence presented is within the
sole province of the jury, as it turns on an evaluation of credibility and
demeanor.  Cain v. State, 958
S.W.2d 404, 408B09 (Tex. Crim. App. 1997). 
Thus, the jury is free to believe all or any part of the testimony
presented.  Id.  In this case, the record shows that Momin did
not want to testify and that he believed testifying was Aa risk.@ 
When defense counsel asked Momin why he did not want to testify, Momin
replied, AI don=t know.  I=m so squared [sic].  That=s why I don=t want to testify. I don=t remember nothing.@ 
Under these facts, the jury was free to believe the testimony of both
Alfred Ozene and Deputy Carson that shortly after the robbery, Momin was able
to positively identify the weapon as a gun. 
The jury was also free to disbelieve Momin=s later testimony that he was not
sure whether the weapon was a gun. 








Furthermore,
even if Momin was not sure whether the weapon displayed was a gun, the evidence
is nonetheless sufficient to support appellant=s conviction. The state may rely on
circumstantial evidence to establish the use of a deadly weapon.  Michel v. State, 834 S.W.2d 64, 67
(Tex. App.CDallas 1992, no pet.); Webber v. State, 757 S.W.2d
51, 54 (Tex. App.CHouston [14th Dist.] 1988, pet. ref=d). 
Further, the State does not have to prove the witness actually saw the
weapon to establish its use.  Michel,
834 S.W.2d at 67; Webber, 757 S.W.2d at 54. 

At
trial, Momin repeatedly testified that the weapon used in the robbery looked
like a gun.  Momin also testified that
the robber displayed the weapon after stating, AMove it.  Move it.@ 
Additionally, Carlos Reyes testified that appellant was carrying a .22
caliber handgun in the days following the robbery.  Based on this testimony, the jury was
entitled to conclude that the .22 caliber handgun that appellant was seen
carrying was the same weapon displayed in the convenience store.  

Viewing
the evidence in a light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that a firearm was used or exhibited
during the robbery.  Viewing all the
evidence in a neutral light, the State=s evidence, when considered by
itself, is not too weak to support a finding beyond a reasonable doubt that a
firearm was used or exhibited during the robbery, and the contrary evidence is
not so strong that the beyond-a-reasonable-doubt standard could not have been
met.  Accordingly, we find that the
evidence is legally and factually sufficient to prove the use or exhibition of
a deadly weapon.  B.  Identity

Appellant
next contends that the evidence is factually insufficient to prove his identity
as one of the perpetrators of the offense. 
To support his argument, appellant emphasizes that Eric Larson, the only
eyewitness to identify appellant, only viewed appellant for two to four seconds
as appellant was fleeing the convenience store.     








It
is well established that a conviction may be based upon the testimony of a
single eyewitness.  Aguilar v. State,
468 S.W.2d 75, 77 (Tex. Crim. App. 1971); Lewis v. State, 126 S.W.3d
572, 575 (Tex. App.CTexarkana 2004, pet. ref=d). 
In this case, although Larson viewed appellant for two to four seconds,
Larson was able to positively identify appellant in a lineup that included
appellant and other individuals with similar physical characteristics.  Larson explained that he was able to get a
good look at appellant.  Larson also
testified that he recognized appellant Athe moment@ he saw appellant in the lineup.  Under these circumstances, we properly defer
to the jury the weight given to Larson=s testimony.   

Viewing
the evidence in a neutral light, the State=s evidence, when considered by
itself, is not too weak to support a finding beyond a reasonable doubt that
appellant was a participant in the robbery, and the contrary evidence is not so
strong that the beyond-a-reasonable-doubt standard could not have been
met.  Appellant=s fourth, fifth, and sixth issues are
overruled.  

Accordingly,
the judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment
rendered and Memorandum Opinion filed March 1, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.

Do Not
Publish C Tex. R. App. P.
47.2(b).

 

 











[1]  Harjew=s first name is not revealed in the record.