TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00145-CR







The State of Texas, Appellant



v.



Guy Weston Moore, IV, Appellee






FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY


NO. 540,388, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING







The State appeals an order granting appellee Guy Weston Moore's motion to
suppress evidence. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2000). We
will affirm the order.

At about 10:10 p.m. on August 15, 1999, two Austin police officers went to a
convenience store in the University of Texas neighborhood in response to a reported forgery. 
They were met outside the store by a man named Garrison. Garrison told the officers that he had
received a telephone call from a check cashing company asking if he had written a check to a man
named Richardson, who was attempting to cash the check at this store. Garrison said he told the
caller that he had not authorized any check, then called the police and drove to the store.

Inside the store, the officers learned that it contained a machine that may be used
to present and cash checks. The machine was connected to a central office in Dallas, and a person
at that office could see the customer by means of a video camera. Officer Eveleth, the only
witness to testify at the suppression hearing, asked the store clerk if he knew who had been using
the check cashing machine. The clerk replied that he did not know. About this time, Officer Fox
told Eveleth "she had spotted a subject who appeared nervous." The clerk told Eveleth that the
person to whom Fox was referring, subsequently identified as appellee Moore, had been in the
store "for a long time and had been standing by the cash machine." 

Eveleth walked over to Moore, who was looking through a telephone book, and
asked him if he had been using the check machine or had spent any time at the machine. Moore
answered both questions "No." Eveleth noticed that Moore was nervous; his hands were shaking
and he was perspiring. Eveleth frisked Moore for weapons, finding none. Eveleth then asked
Moore for permission to search his person. Moore consented to the search. During this search,
the officer found a concealed handgun permit.

Eveleth noticed a backpack near Moore. Moore told the officer that it was his. 
At this point, Eveleth handcuffed Moore "for safety" but told Moore that he was not under arrest. 
He then asked for and received Moore's permission to search the backpack. Inside, the officer
found a printed receipt reflecting that the check cashing machine had been used approximately
thirty minutes earlier. (1) Eveleth again asked Moore if he had used the machine. This time, Moore
acknowledged that he had. Moore then told the officer that he "wanted to come clean" and
admitted trying to cash a check he said he had found on the sidewalk.

At this point, Eveleth decided to arrest Moore and advised him of his rights. The
officers took Moore to the check cashing machine, where he was identified by the "video teller"
as the person who had attempted to cash the Garrison check. As the officers were escorting
Moore to the patrol car, Garrison noticed that the books in Moore's backpack belonged to him. 
Ultimately, an information was filed accusing Moore of stealing five books and a day planner
from Garrison.

At the conclusion of the hearing, the court announced that Moore's motion to
suppress evidence was granted. The court explained:


I do find that this defendant's consent to search extended beyond the search of his
person. From the time he was handcuffed, certainly that consent to search was no
longer valid. I feel he was under arrest; his liberties had been restrained. And I
do not find that there is probable cause to proceed at that point. So everything
thereafter would be suppressed.



The court added, "I find that the officer was quite credible."

The frisk for weapons was a show of authority to which Moore yielded and there
is no dispute that he was seized at that moment. See California v. Hodari D., 499 U.S. 621, 625-26 (1991); Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). It is also agreed that
the seizure was, at that point, an investigative detention, not an arrest. Moore argues that the
detention was unlawful, a contention he did not make below. We disagree. The facts known to
the police at that time -- the reported forgery, Moore's nervousness, and the information that
Moore had been in the store for a long time and had been standing by the check cashing machine
-- gave the officers reasonable grounds to suspect Moore had been engaged in criminal activity and
warranted his temporary detention for further investigation. See Woods v. State, 956 S.W.2d 33,
38 (Tex. Crim. App. 1997). The dispositive issue is whether the circumstances warranted
handcuffing Moore during the investigation.

Citing Rhodes v. State, 945 S.W.2d 115 (Tex. Crim. App. 1997), the State urges
that, under the circumstances shown, the handcuffing was reasonably necessary to effect the goal
of the investigative detention. Moore responds that the handcuffing constituted excessive force
under the circumstances and transformed the detention into an arrest, for which the officer did not
have probable cause. In reviewing these contentions, we defer to the district court's factual
determinations but review de novo the court's application of the law to the facts. See Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

There is no bright-line rule that handcuffing a suspect always constitutes an arrest. 
See Rhodes, 945 S.W.2d at 118. Although handcuffing the suspect is not ordinarily proper during
an investigative detention, it may be resorted to when reasonably necessary to effect the goal of
the detention: investigation, maintenance of the status quo, or officer safety. See id. at 117. The
degree of force employed by a police officer is just one of several factors that must be considered
to determine whether a particular seizure of a person is an arrest or merely an investigative
detention. The nature of the crime under investigation, the degree of suspicion, the location of
the stop, the time of day, and the reaction of the suspect are all facts which bear on the issue. See
4 Wayne R. LaFave, Search and Seizure § 9.2(d) (3d ed. 1996). The officer's opinion, while not
determinative, is another factor to be considered. See Amores v. State, 816 S.W.2d 407, 412
(Tex. Crim. App. 1991). It is also important to consider whether the officer actually conducts
an investigation after seizing the suspect. See id.; see also Rhodes, 945 S.W.2d at 119-20
(Meyers, J., concurring and dissenting). Whether a seizure is an arrest or an investigative
detention depends on the reasonableness of the intrusion under all of the facts. See Rhodes v.
State, 913 S.W.2d 242, 247 (Tex. App.--Fort Worth 1995), aff'd, 945 S.W.2d 115 (Tex. Crim.
App. 1997).

In Amores, a police officer responding to a burglary call at 11:30 p.m. blocked the
suspect's car with his patrol car, ordered the suspect from his car at gunpoint, directed the suspect
to lie face-down on the parking lot with his hands behind him, and threatened to shoot the suspect
if he did not obey. See Amores, 816 S.W.2d at 410. The officer characterized the seizure as an
investigative detention, but the record showed that he did not ask the suspect any questions before
or during the search of his person and vehicle. See id. at 412. The court of criminal appeals
concluded that the detention could not be considered investigatory and held that the seizure
constituted an arrest. See id.

In Burkes v. State, 830 S.W.2d 922, 923 (Tex. Crim. App. 1991), several police
officers responded to a report of drug dealing in an area notorious for that activity. Anticipating
flight upon the arrival of the police, two officers positioned themselves in a dark field behind a
nightclub. See id. As expected, the arrival of squad cars led to an exodus from the nightclub. 
One of the officers in the field encountered Burkes, shined a flashlight in his eyes, and ordered
him to lie down on the ground. See id. The suspect was immediately handcuffed and frisked. 
See id. The officer, who said he considered the suspect to be under arrest, did not ask him why
he was running across the field. See id. at 925. The court held that the suspect was under arrest
at the time of the search. See id.

In Mays v. State, 726 S.W.2d 937, 943 (Tex. Crim. App. 1986), a single police
officer responded to a report of a burglary in progress at 9:45 p.m. The officer found two men
at the address in question and told them he would have to frisk them. See id. After the frisk,
which did not turn up any weapon, the officer handcuffed the two men. See id. The officer
testified that he did this for his own protection "[d]ue to the nature of the call and the way they
were acting scared like maybe they had been caught at something, and I was all alone, and two
of them, and they was both bigger than I was." Id. The court concluded that the officer's actions
were reasonable and justified under the circumstances. See id. at 944.

In Rhodes, two officers in a single patrol car attempted to stop another vehicle at
11:00 p.m. for an observed traffic violation. See Rhodes, 945 S.W.2d at 116. The suspect car
sped away, and in the ensuing chase the officers saw the passenger throw a bag on the street. See
id. Eventually, the car stopped and the driver fled, chased by one of the officers. See id. The
passenger remained in the car, and told the second officer that he did not know the name of the
driver. See id. The officer handcuffed the suspect and walked him to the patrol car. See id. The
officer testified that he did not consider the suspect to be under arrest and had handcuffed him for
his own safety and that of his partner. See id. The officer noted the late hour, the poor lighting,
the suspicious behavior preceding the stop, and the fact that he was alone with the suspect. See
id. The court of criminal appeals sustained the court of appeals' conclusion that the seizure of the
suspect was a temporary investigative detention and that the circumstances reasonably warranted
handcuffing the suspect. See id. at 118-19.

In this cause, the officers were actively investigating their reasonable suspicion that
Moore had attempted to pass a forged check and, based on Eveleth's statement to Moore, did not
consider Moore to be under arrest when he was handcuffed. But we must also consider whether
handcuffing Moore was reasonably necessary to preserve the status quo or to promote officer
safety during the investigation. See id. at 117. Forgery is not a crime that is commonly
associated with violence. The encounter between Moore and the officers took place in a brightly
lit store, not in a dark street or vacant lot. Moore cooperated fully with the officers and consented
to the search of his person. The officers found a handgun permit during this search, but they did
not find a weapon. The officers outnumbered Moore two to one, and one officer could easily
have watched Moore while the other searched his backpack. While we are reluctant to second-guess police officers regarding such matters, there is simply no evidence that the officers had a
reason to fear for their safety or any other justification for handcuffing Moore while pursuing their
investigation. We agree with the trial court that, on this record, the handcuffing transformed the
detention into an arrest for which there was no probable cause.

The order granting the motion to suppress is affirmed.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 10, 2000

Publish
1. The State's brief recites that the officer also found in Moore's possession a piece of paper
on which was written the name "Jeff Richardson" and driver's license and social security
numbers. While Officer Eveleth did testify to finding such a piece of paper, he did not specify
when it was found. 



EM>Burkes v. State, 830 S.W.2d 922, 923 (Tex. Crim. App. 1991), several police
officers responded to a report of drug dealing in an area notorious for that activity. Anticipating
flight upon the arrival of the police, two officers positioned themselves in a dark field behind a
nightclub. See id. As expected, the arrival of squad cars led to an exodus from the nightclub. 
One of the officers in the field encountered Burkes, shined a flashlight in his eyes, and ordered
him to lie down on the ground. See id. The suspect was immediately handcuffed and frisked. 
See id. The officer, who said he considered the suspect to be under arrest, did not ask him why
he was running across the field. See id. at 925. The court h