ACCEPTED
01-14-00248-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/25/2015 2:47:58 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00248-CR

_____

**In the
Court of Appeals
For the
First District of Texas
At Houston**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/25/2015 2:47:58 PM

CHRISTOPHER A. PRINE
Clerk

_____

**On appeal from the County Criminal Court at Law No. 5 of
Harris County, Texas
No. 1861254**

_____

**BRADY CRAIG KOCH, JR.,**
*Appellant*
**v.**
**THE STATE OF TEXAS,**
*Appellee*

---

### BRIEF FOR APPELLANT

---

Emily Detoto
State Bar No.:  00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone:  (713) 227-2244
Facsimile:  (713) 222-5840
emilydetoto@mac.com

Megan E. Smith
State Bar No.: 24076196
917 Franklin, Suite 310
Houston, Texas 77002
Telephone: (713) 899-5438
Facsimile:  (713) 527-2749
megan@megansmithlaw.com

Counsel for Appellant

Counsel for Appellant

**ORAL ARGUMENT REQUESTED**

**Identity of Parties and Counsel**

*Appellate Counsel for Appellant, Mr. Brady Craig Koch, Jr.*

Ms. Emily Detoto
State Bar No.:  00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone:  (713) 227-2244
Facsimile:  (713) 222-5840
emilydetoto@mac.com

Ms. Megan E. Smith
State Bar No. 24076196
917 Franklin, Suite 310
Houston, Texas 77002
Telephone:  (713) 899-5438
Facsimile:  (713) 527-2749
megan@megansmithlaw.com

*Appellate Counsel for Appellee, The State of Texas*

Ms. Devon Anderson
District Attorney

Mr. Alan Curry, Assistant—Appeal

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone:  (713) 755-5800

*Trial Counsel for Appellant, Mr. Brady Craig Koch, Jr.*

Ms. Emily Detoto
State Bar No.:  00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone:  (713) 227-2244
Facsimile:  (713) 222-5840

Mr. Jay Cohen
State Bar No.: 24069528
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone: (713) 225-1900

***Trial Counsel for Appellee, The State of Texas***

Ms. Devon Anderson
District Attorney

Ms. Nicole L. Clark
State Bar No.: 24072958

Mr. Seth C. Gagliardi
State Bar No.: 24073207

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone:  (713) 755-5800

# Table of Contents

**Page(s)**

Identity of Parties and Counsel………………………………………………ii

Index of Authorities……………………………………………………vi

Statement of the Case………………………………………………1

Issue Presented………………………………………………..1

Statement of Facts………………………………………………1

Summary of the Argument……………………..…………………..5

Argument………………………………………………...5

Issue Number One……………………………………………....5

    **THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING MR. KOCH'S MOTION TO SUPPRESS.**

    A. Standard of Review………………………….....................................5

    B. Mr. Koch's Statements to Officer Corral are Inadmissible as They Were Obtained in Violation of *Miranda*…………………………………..6

        a. Failure to Give *Miranda* Warnings Renders Oral Statements Inadmissible………………………………………………6

        b. Mr. Koch was in Custody When Officer Corral Questioned him….8

    C. The Trial Court's Failure to Suppress Mr. Koch's Incriminating Statements Contributed to his Conviction…………………..…………...14

    D. Conclusion…………………………………………16

Prayer……………………..…………..………………...…..16

Certificate of Service…………………………………………………..……….17

Certificate of Compliance……………………………………….…………17

# Index of Authorities

**Page(s)**

**Statutes**

Tex. Code Crim. Proc. art. 38.22……………………………………………………7, 8

Tex. R. App. Proc. § 9.4……………………………………………………………..17

Tex. R. App. Proc. § 44.2(a)…………………………………………….…14

**Federal Cases**

*Berkemer v. McCarty*, 468 U.S. 420 (1984)…………………………………….8

*Miranda v. Arizona*, 384 U.S. 436 (1966)……………………3, 5, 6, 7, 8, 14, 16

*Stansbury v. California*, 511 U.S. 318 (1994)…………………….……...8, 12

**Texas Court of Criminal Appeals**

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002)……………………10

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)…………………...6

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996)………...9, 10, 11, 13

*Harris v. State,* 790 S.W.2d 568 (Tex. Crim. App. 1989)………………...…15

*Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003)………………………14

*Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998)
(op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999)……………………...…15

*Rhodes v. State,* 945 S.W.2d 115 (Tex. Crim. App. 1997)…………………..10

*Shepherd v. State*, 273 S.W.3d 681 (Tex. Crim. App. 2008)……………...5

*State v. Ortiz,* 382 S.W.3d 367 (Tex. Crim. App. 2012)……………...…6, 8, 10

*State v. Saenz*, 411 S.W.3d 488 (Tex. Crim. App. 2013)……………....6, 8, 9, 12

*State v. Sheppard*, 271 S.W.3d 281 (Tex. Crim. App. 2008)…………….…….10

*Wesbrook v. State,* 29 S.W.3d 103 (Tex. Crim. App. 2000),
*cert. denied,* 532 U.S. 944 (2001)……………………………………….……..15

**Texas Intermediate Appellate Courts**

*Campbell v. State*, 325 S.W.3d 223 (Tex. App.—Fort Worth 2010,

no pet.)……………….......................................……………….11, 15

*McRae v. State,* 152 S.W.3d 739 (Tex. App.—Houston [1st Dist.]
2004, pet. ref'd)……………………………………………………….12

*Serrano v. State*, 01-13-00975-CR, 2015 WL 456511 (Tex.
App.—Houston [1st Dist.] Feb. 3, 2015), pet. filed (May 15, 2015)………...….6

*State v. Saenz*, 13-11-00328-CR, 2014 WL 3542092 (Tex. App.—Corpus Christi
July 17, 2014), *pet. ref'd.* (Oct. 8, 2014)………………………………...12, 13

*State v. Tercero*, 01-14-00120-CR, 2015 WL 1544519 (Tex.
App.—Houston [1st Dist.] Apr. 2, 2015, no. pet. h.)…………………………...5

*Wert v. State*, 383 S.W.3d 747 (Tex. App.—Houston [14th Dist.]
2012, no pet.)……………………………………………………...………10

## Statement of the Case

Appellant, Brady Craig Koch, Jr., was charged by information with the misdemeanor offense of driving while intoxicated (second offense) on November 7, 2012. (CR[1] at 8). Mr. Koch was found guilty by a jury. (CR at 91, 96). Punishment was assessed by the trial court at one year confinement in the county jail, to be suspended for a period of two years, placing Mr. Koch on community supervision. (CR at 96-97). As a condition of probation, he was ordered to serve five days in the Harris County Jail. (CR at 97). Mr. Koch timely filed a Notice of Appeal. (CR at 100-01). Mr. Koch's brief was due Monday, June 22, 2105. Appellant's brief is currently late.

## Issue Presented

1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING MR. KOCH'S MOTION TO SUPPRESS.

## Statement of Facts

On November 7, 2012, Mr. Brady was involved in a single car automobile accident against a light post and fence with no passengers in his vehicle. (RR Vol. 2 at 15-16, 34, 67, 121, 154, 205). There was one civilian witness who came upon the scene right after[2] the accident occurred, Albert Lakey. (RR Vol. 2 at 15-16). Mr. Lakey testified that Mr. Koch was crouched over his steering

---

[1] CR refers to Clerk's Record; RR refers to Reporter's Record; SE refers to State's Exhibit.
[2] The State provided *Brady* notice pre-trial that although Officer Corral's offense report said that Mr. Lakey witnessed the accident, Mr. Lakey later informed the prosecutors that he did not witness the accident. (CR at 78).

wheel and the vehicle was smoking, and Mr. Koch was speaking gibberish and he staggered out of his vehicle. (RR Vol. 2 at 16-19). He testified that Mr. Koch then tried to leave the scene and grazed or swiped him[3] with his vehicle, so he restrained him by pinning him against the vehicle until the police arrived and "grabbed him." (RR Vol. 2 at 19, 35, 50-53, 64).

The accident occurred around 10:00 PM, and Officers Arroyo and Thibodeaux were dispatched to the scene at 10:05 PM and they arrived at 10:10 PM. (RR Vol. 2 at 138, 204). The DWI Task Force Officer, Salvador Corral, arrived after Officers Arroyo and Thibodeaux, however, the time is not clear[4] and he testified that he signed on at 10:00 PM and it would have taken him 10 to 15 minutes to get to the accident location. (RR Vol. 2 at 165). Officer Muskiet testified that he arrived at 11:03 PM and Mr. Koch was in the backseat of the patrol car when he arrived. (RR Vol. 2 at 115, 137, 139). There was no breath or blood specimen obtained. (RR Vol. 3 at 14).

Officer Arroyo testified that Mr. Koch was slouched over on the sidewalk when she arrived and that she smelled alcohol on Mr. Koch, so she called for a DWI unit to come investigate. (RR Vol. 2 at 81, 101). She also testified that Mr. Koch was only being detained in the back of a patrol car until the DWI

---

[3] Officer Muskiet was never told that Mr. Koch swiped or hit Mr. Lakey with his vehicle. (RR Vol. 2 at 131). On cross-examination, Mr. Lakey acknowledged that he never told the police this story. (RR Vol. 2 at 41).
[4] Initially, Officer Corral testified that he arrived at the scene at 10:00 p.m. (RR Vol. 2 at 158).

officer arrived, so they could continue to investigate the scene. *Id.* Mr. Koch was placed in handcuffs in the back of a locked patrol car where he was not free to leave, but Officer Arroyo clarified that he was not under arrest. (RR Vol. 2 at 94, 206-07). She did not recall Mr. Koch saying anything derogatory or offensive to her, nor could she remember if Mr. Koch was combative or defiant. (RR Vol. 2 at 75, 207).

When Officer Corral arrived, Mr. Koch was in the backseat of a patrol car so he would not be able to leave the scene, but he was not under arrest, according to Officer Corral. (RR Vol. 2 at 159). Mr. Koch was handcuffed and sleeping when Officer Corral removed him from the back of the patrol car for questioning, and he had to be driven about 50 feet to a different location. (RR Vol. 2 at 155, 161-62, SE3[5] at 171, 243). Officer Corral did not give Mr. Koch his *Miranda*[6] warnings, but he was not free to leave. (RR Vol. 2 at 178). Officer Corral testified that Mr. Koch admitted to having 2, 5, 7, and 15 drinks and that he started drinking beer at noon. (RR Vol. 2 at 225-26). Defense counsel requested a running objection to these admissions in front of the jury, after a motion to suppress[7] was litigated and denied outside the presence of the jury. (RR Vol. 2 at 221, 225). Officer Corral testified that he formally arrested

---

[5] There is only audio for the first 20 to 30 seconds, and then the sound disappears. (RR Vol. 2 at 245).

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] The Motion to Suppress hearing can be found in the record at Volume 2 pages 112-121 and 157-221.

Mr. Koch at 10:46 PM. (RR Vol. 2 at 164). Officer Corral testified that Mr. Koch exhibited all six clues on the horizontal gaze nystagmus test and that he observed the odor of alcohol, bloodshot eyes, and slurred speech. (RR Vol. 2 at 241, 249). Mr. Koch declined the other standard field sobriety tests, and Officer Corral testified that it was his opinion that Mr. Koch was intoxicated. (RR Vol. 3 at 7, 11).

At trial, the defense theory during cross-examination was that Mr. Koch was actually exhibiting signs of a concussion because he was injured in the car accident. (RR Vol. 2 at 49-50, Vol. 3 at 41, 93). The defense also emphasized through the witnesses that because no one had seen the accident occur, Mr. Koch could have swerved to avoid an accident or that there was some cause for the accident other than alcohol. (RR Vol. 2 at 39, 130-31).

The trial court announced findings of fact and conclusions of law on the record, immediately following the Motion to Suppress hearing. (RR Vol. 2 at 220-21). Specifically, the court found the following:

- Mr. Koch's freedom was restricted, but officers told him that he was being detained.

- The detention at its earliest occurred at 10:10 PM and ended at 10:24 PM "when the defendant appeared without handcuffs outside of the backseat."

- Moving Mr. Koch a very short distance was reasonable because the officers could not conduct an investigation in the middle of the street.

- The duration of the detention was reasonable and never converted to custody before Mr. Koch was questioned by Officer Corral.

### Summary of the Argument

Mr. Koch was physically restrained by a witness, then handcuffed and placed in a locked patrol car for a period that may have been up to 24 minutes total. Thus, Mr. Koch was in custody when Officer Corral arrived and began questioning him without first providing *Miranda* warnings. Mr. Koch's incriminating admissions in response to Officer Corral's questions were inadmissible. The trial court erred in failing to suppress these statements.

### Argument

**ISSUE I: THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING MR. KOCH'S MOTION TO SUPPRESS.**

**A. Standard of Review.**

This Court reviews a trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Tercero*, 01-14-00120-CR, 2015 WL 1544519, at 2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2015, no. pet. h.)(citing *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008)). This Court applies a bifurcated standard of review, giving "almost total deference to a trial

court's determination of historical facts that depend on credibility" and a "de novo review of the trial court's application of the law to those facts." *Serrano v. State*, 01-13-00975-CR, 2015 WL 456511, at *2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015), pet. filed (May 15, 2015)(citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)).

In the context of suppression review based on *Miranda*, the Court of Criminal Appeals has recently held: "The ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law." *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013)(citing *State v. Ortiz,* 382 S.W.3d 367, 372 (Tex. Crim. App. 2012)). This Court reviews *de novo* the trial court's ultimate legal determination as to whether Mr. Koch was in custody. *Saenz*, 411 S.W.3d at 494.

## B. Mr. Koch's Statements to Officer Corral are Inadmissible as They Were Obtained in Violation of *Miranda*.

### a. Failure to Give *Miranda* Warnings Renders Oral Statements Inadmissible.

Oral statements are inadmissible in Texas unless they comply with Article 38.22 of the Texas Code of Criminal Procedure. A person must "knowingly,

intelligently, and voluntarily" waive his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); Tex. Code Crim. Proc. art. 38.22 § 3(a)(2). Texas codified the *Miranda* warnings, which provide:

> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:
>
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time; and
>
> (b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

Tex. Code Crim. Proc. art. 38.22 § 2.

## b. **Mr. Koch was in Custody When Officer Corral Questioned him.**

The critical question is whether an accused person is in custody for purposes of triggering *Miranda* and article 38.22. "In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement 'comparable to…formal arrest,' given all the objective circumstances." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012)(quoting *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984); citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)); *accord Saenz*, 411 S.W.3d at 496. This is determined on a case-by-case basis and "this Court looks only to the objective factors surrounding the detention. The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody." *Ortiz*, 382 S.W.3d at 372-73. However, if a police officer "manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody." *Id.* at 373.

The Court of Criminal Appeals has outlined four situations or categories that may constitute custody:

(1) when the suspect is physically deprived of his freedom of action in any significant way,

(2) when a law enforcement officer tells the suspect that he cannot leave,

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013)(quoting *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). The Court of Criminal Appeals elaborated on these situations in *Saenz*:

The first three situations require that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention. The fourth situation requires an officer's knowledge of probable cause to be manifested to the suspect. Custody, however, is not established by the fourth situation unless the manifestation of probable cause 'combined with other circumstances' of the interview, such as duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

*Saenz*, 411 S.W.3d at 496(citing *Dowthitt*, 931 S.W.2d at 255-57).

Moreover, the Court of Criminal Appeals has clarified the purpose of the *Dowthitt* categories in recent years:

> The *Dowthitt* categories were intended to be merely descriptive, not exhaustive. We held that the four categories '*at least*…may constitute custody. We never said that, in order for a set of circumstances to constitute custody, an appellate court must be able to fit it into one of these descriptive categories.

*Ortiz*, 382 S.W.3d at 376(quoting *Dowthitt*, 931 S.W.2d at 255).

Texas courts have made clear that there is not a bright-line rule that handcuffing always constitutes custody or an arrest. *State v. Sheppard*, 271 S.W.3d 281, 290-91 (Tex. Crim. App. 2008); *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002). "The officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Balentine*, 71 S.W.3d at 771 (citing *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex. Crim. App. 1997)(handcuffing is not ordinarily proper during a detention)). In *Balentine*, the officer handcuffed Mr. Balentine and placed him in the back of a patrol car "because he feared for his own safety." *Balentine*, 71 S.W.3d at 771. Gunfire had just been reported in the area and the stop was in the early morning hours; Mr. Balentine had been evasive with and lied to the officer. *Id; see Wert v. State*, 383 S.W.3d 747, 754 (Tex. App.—Houston [14th Dist.] 2012, no pet.)(handcuffed in back of patrol car was not custody because defendant was "aggressive, belligerent, uncooperative, and potentially violent").

The degree of force employed by a police officer is just one of several factors that must be considered to determine whether a particular seizure of a person is an arrest or merely an investigative detention. *State v. Moore,* 25 S.W.3d 383, 386 (Tex. App.-Austin 2000, no pet.). The nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect are all facts which bear on the issue. *See id.* (citing 4 Wayne R. LaFave, *Search and Seizure* § 9.2(d) (3d ed. 1996)).

*Campbell v. State*, 325 S.W.3d 223, 234 (Tex. App.—Fort Worth 2010, no pet.).

In Saenz, after remand from the Court of Criminal Appeals, the Corpus Christi Court of Appeals held that Mr. Saenz was in custody during a DWI stop and agreed that his incriminating statements should have been suppressed:

First, Saenz was 'physically deprived of his freedom of action' in a 'significant way' when he was locked in the back of the patrol car for '12–18 minutes or longer.' *See Dowthitt,* 931 S.W.2d at 255. Second, Officer Bintliff instructed Saenz not to leave. *See Saenz,* 411 S.W.3d at 496 ('If the trial court's future findings determine that Officer Bintliff told appellee that he was not free to leave, then this case could be similar to the second situation in *Dowthitt* based on evidence that appellee was in the back seat of the patrol car, was not free to leave, and was told that he could not leave.'). Third, by locking Saenz in the patrol car and telling him he was not free to leave, the officers 'create[d] a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted.' *Dowthitt,* 931 S.W.2d at 255. Fourth, there was probable cause to arrest Saenz for public intoxication or driving while intoxicated, *see* Tex. Penal Code Ann. § 49.02, 49.04(a) (West, Westlaw through 2013 3d C.S.), and,

considering the totality of the circumstances, we find that the officers' knowledge of probable cause was manifested to Saenz by their words and deeds. *See Stansbury,* 511 U.S. at 325 (noting that an officer's knowledge of probable cause may be manifested to the suspect 'by word or deed'); *Saenz,* 411 S.W.3d at 496 ('Rather than focusing on one discrete circumstance, such as an officer's silence when he places a suspect in his patrol car, the court of appeals should have examined the totality of the circumstances to determine whether a reasonable person would have believed that he was under restraint to the degree associated with a formal arrest.'). In particular, Officer Bintliff manifested his knowledge of probable cause to arrest Saenz when he thrice instructed Saenz—who was illegally parked across two handicapped parking spaces and who exhibited a 'confused, dazed-type look'—to turn off his truck.

*State v. Saenz*, 13-11-00328-CR, 2014 WL 3542092, at \*5 (Tex. App.—Corpus Christi July 17, 2014), *pet. ref'd.* (Oct. 8, 2014).

The circumstances in the case at bar went beyond a case of roadside questioning and sobriety tests that are typically[8] found in a DWI investigative detention. Mr. Koch was initially detained at the scene by Mr. Lakey, who used physical force to pin him against a car until the police arrived, handcuffed him, and placed him in the back of a locked patrol car. If Mr. Lakey arrived on the scene around 10:00 PM and Mr. Koch emerged from the police car at 10:24 PM,

---

[8] "A DWI investigation that includes questioning and field-sobriety tests does not, without more, rise to the level of a custodial interrogation." *McRae v. State*, 152 S.W.3d 739, 749 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)(citations omitted).

then Mr. Koch's freedom was restricted for 24 minutes before being subjected to questioning by the DWI Task Force Officer. A reasonable person would believe he was under arrest. Under the first *Dowthitt* factor, Mr. Koch was physically deprived of his freedom of action in a significant way, for approximately 10 minutes by Mr. Lakey and another 14 minutes in the back of the patrol car. In *Saenz*, 12 to 18 minutes was an appropriate duration to meet the first *Dowthitt* factor. *State v. Saenz*, 13-11-00328-CR, 2014 WL 3542092, at *5 (Tex. App.—Corpus Christi July 17, 2014), *pet. ref'd.* (Oct. 8, 2014). Officer Corral even acknowledged on cross-examination that a reasonable person in Mr. Koch's situation would not have believed that he was free to leave. (RR Vol. 2 at 179). This also fits the third *Dowthitt* category.

Officer Arroyo had probable cause to arrest Mr. Koch for driving while intoxicated when she arrived on the scene of a single car accident and saw Mr. Koch slouched over and smelling of alcohol. She knew that he had been driving the wrecked car. She did not tell Mr. Koch that he was free to leave and she manifested her knowledge that there was probable cause to Mr. Koch by handcuffing him and placing him in a locked patrol car. This fits the fourth *Dowthitt* category.

Officer safety was also not a concern, as this was not a case involving weapons or violence and there were at least four police officers at the scene.

Moreover, the only officer at trial with personal knowledge of Mr. Koch's actions prior to placing him in handcuffs in a locked patrol car was Officer Arroyo. She testified that she did not recall Mr. Koch saying anything derogatory or offensive to her, nor could she remember if Mr. Koch was combative or defiant. Officer Corral arrived after Mr. Koch was placed in custody and he had no first-hand knowledge of Mr. Koch's prior actions. Officer Muskiet also arrived after Mr. Koch was in custody.

## C. The Trial Court's Failure to Suppress Mr. Koch's Incriminating Statements Contributed to his Conviction.

"If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. Proc. § 44.2(a). "In conducting this analysis in the context of a *Miranda* error, [this Court] must judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error." *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003)(internal quotations omitted).

> In applying the 'harmless error' test, our primary question is whether there is a 'reasonable possibility' that the error might have contributed to the conviction.

14

> *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 944 (2001). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not 'in the light most favorable to the prosecution.' *Id.* at 586.

*Campbell*, 325 S.W.3d at 238.

The most damaging evidence at Mr. Koch's trial was the statement by Mr. Koch that he had 2, 5, 7, and 15 drinks and that he started drinking beer at noon. Mr. Lakey's testimony was discredited as it changed several times and the police officers did not corroborate what he told the jury. The scene video was missing audio but for the first 20 to 30 seconds, and only the horizontal gaze nystagmus was performed. There was also no blood alcohol concentration testing. Without Mr. Koch's detrimental admissions, the jury could have credited the defense theory that Mr. Koch was not intoxicated, instead he was injured in the car accident. Mr. Koch was prejudiced by this error and this Court

cannot be assured beyond a reasonable doubt that this error did not contribute to the conviction.

**D. Conclusion.**

Mr. Koch's Fifth Amendment rights were violated when he was not properly advised of the *Miranda* warnings before being subjected to Officer Corral's questioning while he was in custody. The trial court erred in failing to suppress Mr. Koch's inadmissible statements. This Honorable Court should reverse the judgment of conviction, vacate the sentence, and remand for a new trial.

## Prayer

For the reasons above, Appellant respectfully prays this Court of Appeals reverse the judgment of conviction and sentence, and remand this case back to the trial court for a new trial.

Respectfully submitted,

__/s/ Emily Detoto_____
EMILY DETOTO
State Bar No.: 00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone: (713) 227-2244
Facsimile: (713) 222-5840
emilydetoto@mac.com

/s/ Megan Smith_____
MEGAN E. SMITH
State Bar No. 24076196
917 Franklin, Suite 310
Houston, Texas 77002
(713) 899-5438
(713) 527-2749 (fax)
megan@megansmithlaw.com


Counsel for Appellant


**Certificate of Service**

I hereby certify that a true and correct copy of the Brief for Appellant was electronically delivered to Mr. Alan Curry, Appellate Division Chief, Harris County District Attorney's Office, on this 25th day of June 2015.

_____/s/ Megan Smith_____
MEGAN SMITH


**Certificate of Compliance**

I hereby certify, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, that the instant brief is computer generated using Microsoft Word for Mac and said computer program has identified that there are 3,898 words within the portions of this brief required to be counted by Rule 9.4(i)(1)&(2) of the Texas Rules of Appellate Procedure. The document was prepared in proportionately spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

_____/s/ Megan Smith_____
MEGAN SMITH