**Opinion issued June 25, 2015.**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-14-00729-CR

———————————

**LATOYA Y. TAYLOR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 6**
**Harris County, Texas**
**Trial Court Case No. 1920181**

---

**MEMORANDUM OPINION**

After the trial court denied her motion to suppress evidence, appellant, LaToya Y. Taylor, pleaded guilty to possession of less than two ounces of marihuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (a), (b) (1) (West 2010). The trial court found appellant guilty and assessed punishment at three

days in jail, a $100 fine, and one years' suspension of appellant's driver's license. In a single issue, appellant contends the trial court erred by denying her motion to suppress evidence. We reverse and remand.

## BACKGROUND

Shortly before 5:00 p.m. on September 23, 2013, Houston Police Officer A. Huckabee and his partner were on patrol when they ran appellant's license plates on their computer system while passing her car. The computer system showed that appellant's plates were expired. The officers then initiated a traffic stop based on the expired license plates. As Officer Huckabee got out of his patrol car and approached appellant's car, he noticed that the license plate number on the registration sticker did not match the numbers on the physical license plates. When asked about appellant's demeanor, Huckabee testified as follows:

> I noticed she seemed kind of unusually nervous. She was rubbing her hand on—rubbing her palms on the top of her pants like she was nervous. She was kind of shifting in her seat a little bit; didn't really want to look me in the eye; giving me short, single answers—single-word answers.

"[B]ased on [appellant's] nervous demeanor and the fact that [Huckabee] though she might have a fictitious registration," Huckabee testified that he asked appellant to step out of her car so that he could put her in the back of the police car and then safely conduct the registration investigation without appellant running or

driving away. Officer Huckabee also testified that he handcuffed appellant before

he put her in the back of the patrol car for safety reasons.

> It's another officer-safety issue. There's been instances in the past
> where suspects have shot officers in the back of the head while they
> were in the police car because they weren't handcuffed or properly
> searched.

At this point, appellant was not under arrest and she was not read her statutory

rights; she was detained while the officer investigated the possible fictitious car

registration. Officer Huckabee then asked appellant whether she had any weapons

or contraband in her car, and appellant answered negatively.

Officer Huckabee testified that he conducted a pat-down search "for safety

reasons" before he put appellant in the back of the patrol car to make sure that she

did not have a weapon in her pocket.

> [Prosecutor]: As part of detaining the defendant did you conduct a
> pat-down search?

> [Huckabee]: we did, before we placed her in the back of the patrol
> car, for officer-safety reasons.

> * * * *

> [Huckabee]: It was for officer-safety reasons before, you know, we
> put her in the back of the police car for the purpose of our registration
> investigation because people have concealed little Derringers in their
> pockets.

During the pat-down search, Officer Huckabee stated that he felt a bag of

loose substance in her pockets, and, when he asked the appellant what it was, she

3

told him that it was marihuana. Officer Huckabee then pulled the bag out of appellant's pocket and, based on his training and experience, concluded that the substance was in fact marihuana. Officer Huckabee then arrested appellant for possession of marihuana.

## MOTION TO SUPPRESS

In her sole issue, appellant argues that the trial court erred in denying her motion to suppress the marihuana seized from her because, under the United States Constitution, the frisk that led to the discovery of the marihuana was not justified. *See* U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968).

### *Standard of Review*

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo." *Id.* We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression

4

hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id*. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

### *Applicable Principles of Law*

"A 'stop' and 'frisk' by law enforcement personnel amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing *Terry*, 392 U.S. at 16, 88 S. Ct. at 1877). Under an exception to the Fourth Amendment's warrant requirement, however, an officer may generally be justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly-criminal behavior." *Id.* (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas

courts require reasonable suspicion before a seizure of the person or property can occur.")).

To determine the reasonableness of an investigative detention, we consider whether the officer's action was (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference. *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *Davis*, 947 S.W.2d at 242. Under the first prong, an officer is generally justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly-criminal behavior" where the officer has "specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Carmouche*, 10 S.W.3d at 328. Under the second prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947 S.W.2d at 245.

A law enforcement officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons, even in the absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. However, "[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence." *Carmouche*, 10 S.W.3d at 329 (quoting

6

*Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). A pat-down search is not justified on the basis that a law enforcement officer has a "reasonable suspicion to believe that a detainee is involved in criminal activity." *Id.* (distinguishing legal standard justifying initial detention from legal authority to conduct "frisk"). "The 'exigencies' that permit the additional search are generated strictly by a concern for the safely of the officers." *Id.* (citing *Terry*, 392 U.S. at 25–26, 88 S. Ct. at 1882). And the "additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.* (citing *Terry*, 392 U.S. at 25–27, 88 S. Ct. at 1882–83; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991)).

*Analysis*

Here, appellant does not contest the lawfulness of the investigatory detention. Instead, she "is only seeking review on the legality of the pat and frisk." Specifically, appellant argues that the State presented no evidence that would have afforded Officer Huckabee an objective reasonable basis for suspecting that appellant was "presently armed and dangerous." In response, the State points to (1) the fact that appellant's license place was expired and did not match the number on her registration sticker, and (2) appellant's nervous behavior while in the car, including a failure to maintain eye contact, short, one-word answers,

7

shifting in her seat, and "rubbing her palms on the top of her pants like she was nervous."

In *Carmouche v. State*, 10 S.W.3d 323, 326–27 (Tex. Crim. App. 2001), a police informant told the officer that appellant would be driving from Houston to Nacogdoches while carrying 10 ounces of cocaine, so the police set up surveillance at a gas station along the route. After appellant left the gas station, officers followed him and pulled him over after observing a traffic violation. *Id.* There were several officers at the scene. *Id.* The officers searched the car with consent, and when tipped off by the informant to check appellant's person, the officer performed a pat-down search on appellant and found more than $1,900 in cash. *Id.* The court of criminal appeals noted that reasonable suspicion of illegal activity was not sufficient to justify a "*Terry* frisk," but that "[t]he additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.* at 329. The court noted that such circumstances were, in fact, present because of the "nature of the suspected criminal activity," i.e., drug trafficking. *Id*. at 330.

The court of criminal appeals also found sufficient circumstances to warrant a *Terry* frisk in *State v. Castleberry*, 332 S.W.3d 460 (Tex. Crim. App. 2011). In that case, the police spotted Castleberry and another man walking behind a closed

business at 3 a.m. *Id.* at 462. The area had one of the "higher crime rates" and had been subject to several recent burglaries. *Id.* The officer and his partner approached the men, asked them what they were doing, and asked for their identification. *Id.* Castleberry reached for his waistband, and the officer became concerned that he might have a weapon. *Id.* at 463. The officer told Castleberry to put his hands up, and Castleberry again reached for his waistband. *Id.* The officer told appellant to put his hands behind his back so that the officer could frisk him, and for a third time appellant reached for his waistband. *Id.* This time Castleberry pulled out a baggie of cocaine and threw it, and the officer arrested him. *Id.* The court of criminal appeals concluded that the officer has the right to frisk Castleberry because he was behind a closed business in a high crime area, and when asked for his identification, reached for his waistband, "an act that could be reasonably construed as reaching for a weapon." *Id.* at 469.

However, in *Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013), the court of criminal appeals found that the circumstances presented did not warrant a *Terry* frisk. In that case, appellant was sitting in his truck at a public boat ramp during his lunch hour, when he was approached by two game wardens. *Id.* at 665. The wardens thought the truck looked "out of place" and "suspicious." *Id.* When the warden asked Wade what he was doing, and Wade replied that he was eating lunch, the warden did not believe him because he did not see any trash from a

lunch. *Id.* The warden did not believe several answers by Wade about where he lived and what he was doing at the boat ramp; he also noticed that Wade appeared "overly nervous." *Id.* Thereafter, the warden twice asked Wade if he had any weapons or contraband, and both times Wade responded, "Why are you doing this to me?" The warden then frisked Wade and asked him again if there was anything he should know about. *Id.* at 665–66. Wade said there was a pipe in the truck. *Id.* The warden searched the truck and found a small amount of methamphetamine. *Id.* The court of criminal appeals concluded that what began as a consensual encounter became a detention when the warden ordered Wade out of the truck. *Id.* The court further concluded that the warden had neither reasonable suspicion of criminal activity, nor an objectively reasonable concern for his safety. Specifically, the court noted that the State had provided three factors to support the warden's conduct: (1) Wade's undue nervousness, (2) "changing statements" by Wade, and (3) Wade's "strange response" when he repeatedly asked "Why are you doing this to me?" *Id.* at 670–72. The court began by noting that nervous or evasive behavior could be a relevant factor in determining reasonable suspicion for a *Terry* frisk, but noted that "it is not particularly probative." *Id.* at 671. The court likewise found the other bases argued by the State unpersuasive, concluding that "[n]either nervousness nor a refusal to cooperate with an officer during a consensual encounter are sufficient by themselves to constitute reasonable

10

suspicision[,]" "[n]or were they sufficient in combination with appellant's statements about his reasons for coming to the boat launch to provide the basis for the detention and frisk." *Id.* at 676. Because appellant's statement regarding the pipe was tainted by the warden's illegal detention, it could not provide the basis for searching Wade's truck. *Id.*

In *State v. Moore*, 25 S.W.3d 383, 384 (Tex. App.—Austin 2000, no pet.), the police went to a convenience store in response to a reported forgery. There, police noticed appellant, "who appeared to be nervous" standing near a machine used to present and cash checks. *Id.* at 385. After appellant denied using the machine, the officer noticed that "Moore was nervous; his hands were shaking and he was perspiring[,]" so the officer frisked him for weapons, finding none. *Id.* The officer then handcuffed Moore "for safety" and requested permission to search his backpack, in which he found a receipt for the check cashing machine for 30 minutes earlier. *Id.* Moore then confessed to trying to cash a check he claimed to have found on the street. *Id.* The court concluded that the *Terry* frisk and subsequent events were not justified, stating:

> But we must also consider whether handcuffing Moore was reasonably necessary to preserve the status quo or to promote officer safety during the investigation. Forgery is not a crime that is commonly associated with violence. The encounter between Moore and the officer took place in a brightly lit store, not in a dark street or vacant lot. Moore cooperated fully with the officers and consented to the search of his person. The officers found a handgun permit during this search, but they did not find a weapon. The officer outnumbered

11

Moore two to one, and one office could easily have watched Moore while the other searched his backpack. While we are reluctant to second-guess police officers regarding such matters, there is simply no evidence that the officer had a reason to fear for their safety or any other justification for handcuffing Moore while pursuing their investigation. We agree with the trial court that, on this record, the handcuffing transformed the detention into an arrest for which there was no probable cause.

*Id.* at 387.

From these cases, we conclude that it is appropriate for us to consider, among other things, the nature of the crime being investigated, the place, time, and circumstances of the detention, and the reaction of the suspect in determining whether there were specific and articulable facts which could reasonably lead an officer to conclude that a suspect might possess a weapon.

Here, the *Terry* stop occurred roadside at 5 p.m. There is no evidence that this was a high-crime area. There were two officers present; appellant was alone. Unlike *Carmouche*, the officers were not investigating a narcotics crime or any other offense likely to involve violence. Instead, Officer Huckabee testified that he was investigating appellant for a possible "fictitious registration."[1] Attaching a fictitious registration to a vehicle is a Class B misdemeanor. *See* TEX. TRANSP. CODE ANN. § 502.475(a)(4) (Vernon 2014). Unlike *Castleberry*, appellant did not repeatedly ignore officer requests to move her hands from a location that might

---

[1] There is no evidence in the record that Huckabee thought the car might have been stolen.

12

conceal a weapon. In contrast, Officer Huckabee testified that, while sitting in the car, appellant was "rubbing her palms on the top of her pants *like she was nervous*." (emphasis added). Nothing suggested that this "rubbing" could have reasonably been perceived as an attempt to reach a weapon, that the officer asked appellant to stop, or that appellant disobeyed and continued the "rubbing" after being removed from the car.

Indeed, Huckabee justified his "pat down" on only two factors: (1) appellant's "nervous demeanor," and (2) "officer safety." Like *Wade*, these two factors, without any additional circumstances from which that the officer could have formed a reasonable belief that appellant was armed, are insufficient to justify the *Terry* frisk. *See Wade*, 422 S.W.3d at 670. Nervousness "is not particularly probative because 'most citizens with nothing to hide will nonetheless manifest an understandable nervousness in the presence of the officer.'" *Id.* at 671 (quoting *Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984)). And, while we understand an officer's necessary caution when approaching roadside encounters[2], not every roadside encounter in which an officer removes a suspect from a car justifies a *Terry* frisk as a matter of "officer safety." A *Terry* frisk is unjustified when conducted solely as a matter of routine. *O'Hara v. State*, 27 S.W.3d 548,

---

[2] See *Michgan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481 (1983) (noting that "roadside encounters between police and suspects are especially hazardous").

13

553 (Tex. Crim. App. 2000); *see also Rebeles v. State*, No. 13-12-00408-CR, 2014 WL 1370039, *3 (Tex. App.—Corpus Christi Apr. 3, 2014, no pet.) (not designated for publication) ("The characterization of the frisk as a simple precaution constitutes justification based on routine rather than a justified belief that appellant was armed or dangerous.").

After reviewing the evidence in the light most favorable to the trial court's ruling, we conclude that the record contains no "specific and articulable facts which reasonably lead [the officer] to conclude that the suspect might possess a weapon." *Wood*, 515 S.W.2d at 306 (citing *Terry*, 392 U.S. at 25–27, 88 S. Ct. at 1882–83). As such, the frisk was not justified under *Terry*, and the trial court erred in denying appellant's motion to suppress.

Nevertheless, the State argues that the search is also valid as a search incident to arrest because Officer Huckabee had probable cause to arrest appellant after she acknowledged that she had marihuana in her pocket. Appellant's statement about the marihuana was derived from Huckabee's illegal *Terry* frisk and was "fruit of the poisonous tree," therefore, it could not provide probable cause for her arrest. *See Wade*, 422 S.W.3d at 676 (holding statement made after illegal detention and frisk did not provide probable cause for subsequent search).

We sustain appellant's sole point of error.

# CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).